UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL W. SCOTT,

      Plaintiff,

v.                                         Case No. 3:22-cv-679-MMH-PDB

RICKY DIXON, et al.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Paul W. Scott, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on June 17, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] with attachments (Docs. 1-1 through 1-9) pursuant to 42 U.S.C. § 1983. In the Complaint, Scott names as Defendants: (1) FDOC Secretary Ricky Dixon; (2) Warden Travis Lamb; (3) Centurion of Florida, LLC; (4) Nurse Wendy Hall; and (5) Nurse Patricia McDonald. Complaint at 2-3. He asserts that Defendants acted with deliberate indifference in violation of the Eighth Amendment when he received

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

an overdose of insulin on June 16, 2020. <u>See</u> <u>id.</u> at 3-7. Scott requests declaratory relief and monetary damages. <u>Id.</u> at 8.

This matter is before the Court on the following Motions: (1) Centurion of Florida, LLC's Motion to Dismiss (Centurion Motion; Doc. 17); (2) Secretary Dixon and Warden Lamb's Motion to Dismiss (FDOC Motion; Doc. 24) (collectively FDOC Defendants); and (3) Nurses McDonald and Hall's Motion to Dismiss (Nurses Motion; Doc. 25) (collectively Nurse Defendants). Scott filed responses in opposition to the Motions. <u>See</u> Centurion Response (Doc. 22); FDOC/Nurses Response (Doc. 35). Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[2]

Scott alleges that he has diabetes, and on June 16, 2020, he was scheduled to receive an insulin shot during "medication call" at Union Correctional Institution (UCI). Complaint at 3. According to Scott, when Nurse McDonald arrived at his cell in P-Dorm to administer the shot, he "noticed she had a hard time reading the labels on the bottles." <u>Id.</u> at 4. Scott told Nurse McDonald the amount of regular and "N.P.H." insulin that he should receive.

---

[2] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Scott, and accept all reasonable inferences that can be drawn from such allegations. <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa Cnty.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

Id. Nurse McDonald allegedly responded, "I know how to do my job, and I don't need you trying to tell me how to do it," and then administered the shot. Id. Scott avers that approximately 30 minutes after Nurse McDonald administered the shot, "[he] felt [his] blood sugar drop drastically," and he began to sweat, shake, and vomit. Id. During the next security check, Officer Middlebrooks observed Scott's symptoms and told Nurse McDonald that Scott "was in medical distress and that she needed to come check on [him]." Id. She allegedly refused. Id. Scott avers that Officer Middlebrooks then contacted the urgent care office, after which Scott was "immediately" placed in a wheelchair and transported to the urgent care building. Id.

The urgent care nurses discovered that Scott had low blood sugar, so they gave him food and a tube of glucose. Id. at 4-5. When the nurses checked his blood sugar fifteen minutes later, it was 87. Id. at 5. According to Scott, his pulse was 162, and his blood pressure had increased from 198 over 109 to 200 over 100. Id. Scott also continued to experience nausea, vomiting, blurry vision, and confusion. Id. He alleges that because UCI could not provide the necessary treatment, he was transported to Shands Hospital, where the staff stabilized and admitted him for treatment. Id. He was discharged from Shands on June 18, 2020. Id.

According to Scott, Nurse McDonald "overdosed [him] with insulin by giving [him] the amount of regular insulin for N.P.H. and the amount of N.P.H. for regular insulin." Id. at 6, He contends that "through conversation with medical staff and nurses[,] [] it is common knowledge that [he] was administered an overdose of regular insulin." Id. Scott avers that "[u]pon information and belief this is not the first time that Nurse M[]cDonald overdosed an inmate with insulin. There have been several inciden[ts]." Id. As a result of the alleged overdose, Scott now suffers from memory loss, diminished eyesight, loss of taste, and diminished capacity for comprehension. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while

"[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court

must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

In its Motion, Centurion argues that Scott's claim against it should be dismissed because he fails to state an Eighth Amendment deliberate indifference claim upon which relief can be granted. See Centurion Motion at 7-8. In their Motion, the FDOC Defendants request that the Court dismiss Scott's claims against them because: (1) they are entitled to Eleventh Amendment immunity; (2) Scott fails to state an Eighth Amendment claim upon which relief can be granted; (3) he fails to state a cause of action against

6

them; (4) the Complaint is a shotgun pleading; and (5) they are entitled to qualified immunity. <u>See</u> FDOC Motion at 4-15. The Nurse Defendants also argue that Scott's claims against them should be dismissed because: (1) he fails to state an Eighth Amendment claim upon which relief can be granted, and (2) they are entitled to qualified immunity. <u>See</u> Nurses Motion at 7-12. In response, Scott argues that he states plausible Eighth Amendment claims against all Defendants. <u>See</u> Centurion Response at 3-7; FDOC/Nurses Response at 10-11.

## V. Analysis

### A. Federal Rule of Civil Procedure 8

The FDOC Defendants argue that Scott's Complaint is a "shotgun pleading" that violates Federal Rule of Civil Procedure 8(a)(2). <u>See</u> FDOC Motion at 10-13. A civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Indeed, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). To avoid dismissal for

failure to state a claim on which relief can be granted, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Notably, a "shotgun pleading" is a complaint that fails to comply with Rule 8(a)(2) because it contains numerous causes of action adopting the factual allegations of all preceding counts; is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; does not separate causes of action into separate counts; or asserts multiple claims against multiple defendants while failing to specify which defendants are responsible for which acts or omissions. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322 (11th Cir. 2015).

Here, Scott identifies Secretary Dixon as the person who "is legally responsible for the over-all operation of the Department and each Institution under its jurisdiction, including Union Correctional Institution." Complaint at 2. He also sues Warden Lamb who is "legally responsible for the operation of Union Correctional Institution and for the welfare of all the inmates at that prison." Id. However, beyond these descriptors, Scott fails to specify any acts or omissions for which the FDOC Defendants are responsible. See generally id.

8

He also does not assert any facts as to how they violated his federal constitutional rights or were involved in the alleged overdose or his subsequent treatment. See id. As such, the Court finds the Complaint does not set forth a short and plain statement of Scott's entitlement to relief such that the FDOC Defendants have fair notice of the claims against them and the facts underlying those claims. See Twombly, 550 U.S. at 555 (noting that the purpose of Rule 8(a)(2) is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (alteration in original) (citation omitted). Thus, the FDOC Motion is due to be granted on this basis.

### B. Eleventh Amendment Immunity

The FDOC Defendants next assert that they are entitled to Eleventh Amendment immunity because Scott sues them "by virtue of their positions only." FDOC Motion at 5.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials

9

> where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

Hayes v. Sec'y, Fla. Dep't of Child. & Fams., 563 F. App'x 701, 703 (11th Cir. 2014).[3] In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[4] 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the FDOC Secretary was immune from suit in his official capacity. Id.

The Eleventh Amendment bars suit against the FDOC Defendants for monetary damages in their official capacities. Here, the Complaint does not

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4] Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986).

identify the capacities in which the FDOC Defendants are being sued, <u>see</u> <u>generally</u> Complaint, and Scott requests monetary relief under § 1983, which would not be available if he sued the FDOC Defendants in their official capacities only. In an abundance of caution, the Court will construe the Complaint as raising claims against the FDOC Defendants in their individual and official capacities. Therefore, the FDOC Motion is due to be granted only as to Scott's claims against the FDOC Defendants in their official capacities.

### C. Eighth Amendment Deliberate Indifference

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. <u>Swain v.</u>

Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834);

Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." Id. (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." Harper v. Lawrence Cnty.,

12

592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." Id. (quotation omitted).[5] An inmate-plaintiff bears the burden to establish both prongs. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted). Importantly, for allegedly inadequate medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Hoffer, 973 F.3d at 1271 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference . . . as can a doctor's decision to take an

---

[5] The Eleventh Circuit previously recognized "a tension within [its] precedent regarding the minimum standard for culpability under the deliberate-indifference standard." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). Regardless, the court stated that the "competing articulations–'gross' vs. 'mere' negligence"–may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard." Id.; see also Patel v. Lanier Cnty., 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). The court has resolved that tension by unequivocally instructing that an Eighth Amendment deliberate indifference claim requires a showing that a defendant "acted with more than gross negligence." Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis omitted).

easier and less efficacious course of treatment" (internal citation omitted) or fail to respond to a known medical problem).

While the bar to establishing an Eighth Amendment deliberate indifference claim is high, the Eleventh Circuit Court of Appeals has instructed that it is "appropriately high." Wade v. McDade, 67 F.4th 1363, 1378 (11th Cir. 2023). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892,

14

897 (11th Cir. 2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

## 1. Centurion

Centurion asks the Court to dismiss Scott's Eighth Amendment claim against it because he fails to identify a custom or policy of Centurion that amounted to deliberate indifference or caused a federal constitutional violation. Centurion Motion at 8. Notably, Centurion contracted with the FDOC to provide medical services to inmates within the State of Florida. Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 703 (11th Cir. 1985). Indeed,

> "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. <u>Buckner v. Toro</u>, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under §

15

> 1983 may not be based on the doctrine of respondeat
> superior." <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326,
> 1329 (11th Cir. 2003) (en banc).

<u>Craig v. Floyd Cnty.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011); <u>see</u> <u>Denham v.</u>

<u>Corizon Health, Inc.</u>, Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at

*3 n.1 (M.D. Fla. June 4, 2015)[6] ("[W]hen a government function is performed

by a private entity like Corizon, the private entity is treated as the functional

equivalent of the government for which it works.") (citation omitted), <u>aff'd</u> 675

F. App'x 935 (11th Cir. 2017).

Where a deliberate indifference medical claim is brought against an

entity, such as Centurion, based upon its functional equivalence to a

government entity, the assertion of a constitutional violation is merely the first

hurdle in a plaintiff's case. This is so because liability for constitutional

deprivations under § 1983 cannot be based on the theory of respondeat

superior. <u>Craig</u>, 643 F.3d at 1310 (quoting <u>Grech</u>, 335 F.3d at 1329); <u>see</u> <u>Denno</u>

<u>v. Sch. Bd. Of Volusia Cnty.</u>, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a

government entity may be liable in a § 1983 action "only where the

---

[6] The Court notes that although decisions of other district courts are not
binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union
Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court
would not be bound to follow any other district court's determination, the decision
would have significant persuasive effects.").

[government entity] <u>itself</u> causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 693-94 (1978).

In <u>Monell</u>, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). Under the directives of <u>Monell</u>, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." <u>Denno</u>, 218 F.3d at 1276; <u>see</u> <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating <u>Monell</u> "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

17

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. Of Cnty. Comm'rs of Bryan Cnty.

18

v. Brown, 520 U.S. 397, 404 (1997). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law," see Sewell, 117 F.3d at 489, or a "persistent and wide-spread practice" of which the entity is aware, see Denno, 218 F.3d at 1277. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting Canton, 489 U.S. at 385). Because Centurion's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to inmates, Scott must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation.

Here, Scott neither identifies an official Centurion policy of deliberate indifference nor an unofficial Centurion custom or practice that acted as a moving force behind the alleged constitutional violation. In fact, Scott's Complaint is devoid of any specific claims against Centurion as opposed to Nurse McDonald. His factual allegations relate only to a single incident at UCI in which Nurse McDonald allegedly gave Scott an overdose of insulin. However, even assuming Nurse McDonald's actions amounted to deliberate

indifference, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom . . . ." Craig, 643 F.3d at 1311. Upon review, the Court concludes that Scott has not alleged facts sufficient to state a plausible Eighth Amendment claim for relief against Centurion, and Centurion's Motion is due to be granted.

### 2. FDOC Defendants

The FDOC Defendants contend that Scott "fails to state any cognizable claims against [them] or how the actions of other Parties are attributable to [them]." FDOC Motion at 9. They assert that Scott did not have an objectively serious medical need, and the factual allegations in the Complaint demonstrate that Scott received immediate medical care. Id. at 6-7. According to the FDOC Defendants, Scott pleads no facts from which the Court could plausibly infer that they ignored his medical condition or provided him with inadequate treatment. See id. at 9.

From a review of the Complaint, it appears that Scott sues Warden Lamb and Secretary Dixon based on their supervisory positions. See Complaint at 2. The Eleventh Circuit has held that "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."

20

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[7] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[8] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957-58.

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

---

[7] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).
[8] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

Any supervisory claim against the FDOC Defendants fails because Scott has not alleged sufficient facts to show that they were personally involved in, or otherwise causally connected to, the alleged violation of his Eighth Amendment rights. Indeed, in the Complaint, Scott sets forth no factual allegations about the FDOC Defendants' involvement in the underlying incident. As pled, Scott's allegations amount to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Thus, the FDOC Defendants' Motion is due to be granted to the extent that they assert Scott fails to state an Eighth Amendment claim for relief against them as supervisory officials. The Court will dismiss without prejudice the claims against the FDOC Defendants.[9]

### 3. Nurse Defendants

In their Motion, the Nurse Defendants argue that Scott has failed to state an Eighth Amendment deliberate indifference claim against them. Nurses Motion at 7-11. They assert that he presents no allegations as to how Nurse Hall violated Scott's federal constitutional rights or injured him. Id. at

---

[9] For this same reason, because Scott's allegations fail to state a claim for a constitutional violation, the FDOC Defendants' assertion of their right to qualified immunity would provide an alternative basis for dismissal.

7. And they argue that Scott's allegations against Nurse McDonald amount to no more than gross negligence. Id. at 10.

The Court finds that Scott does not allege sufficient facts to raise an Eighth Amendment claim against Nurse Hall. Although Scott names Nurse Hall as a Defendant, he provides no allegations that associate her with the alleged overdose. And insofar as Scott attempts to hold her liable based on her supervisory position, he has not pled sufficient facts to do so. See Ingram, 30 F.4th at 1254. Therefore, the Nurse Defendants' Motion is due to be granted as to the contention that Scott fails to state a claim against Nurse Hall. See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) (affirming district court's dismissal of claims against certain defendants where prisoner's complaint did not set forth any factual allegations that associated those defendants with the alleged constitutional violation).

As to Nurse McDonald, Scott's allegations do not support a claim that he received medical care "so grossly incompetent . . . as to shock the conscience." Hoffer, 973 F.3d at 1271. Even assuming Nurse McDonald administered the incorrect dosage of insulin, Scott offers no facts from which the Court can infer that McDonald acted intentionally or "'callously and deliberately' administered the wrong dose." Pasco v. Carter, No. 3:22CV559-LC-HTC, 2022 WL 1913015,

at *5 (N.D. Fla. May 13, 2022), report and recommendation adopted by No. 3:22CV559-LC-HTC, 2022 WL 1910122 (N.D. Fla. June 3, 2022); see Pacheco v. Charlotte Cnty. Jail, No. 2:16-CV-863-FTM-99MRM, 2016 WL 7440873, at *3 (M.D. Fla. Dec. 27, 2016) (dismissing prisoner's "negligence-based claims against the defendants for failing to ensure the correct insulin dosage."). Notably, Scott asserts that Nurse McDonald appeared to have "a hard time reading the labels on the [insulin] bottles." Complaint at 4. Such an allegation instead supports the conclusion that Nurse McDonald misread the insulin types[10] and did not intentionally overdose Scott. Although Scott alleges "upon information and belief" that Nurse McDonald has overdosed another inmate, his speculation unsupported by any well-pled factual allegations does not satisfy the applicable pleading standard. See Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013) (stating that the court did not have to take as true plaintiff's allegations upon information and belief that Florida possessed a supply of pentobarbital that was expired, illegally obtained, or compounded); Smith v. City of Sumiton, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (noting that for purposes of a Rule 12(b)(6) motion to dismiss, the court did not have

---

[10] In the "Discharge Summary" attached to the Complaint, Dr. Mohamad Taha notes that Scott reported "he takes NPH insulin twice a day and at correction facility the nurse gave him regular insulin instead of NPH insulin." Doc. 1-8 at 4.

to take as true pretrial detainee's allegation that "[u]pon information and belief, other individuals have been subjected to the same sexual assault and sexual abuse") (citation omitted). Scott's assertions sound in negligence, if at all, which "does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

To the extent Scott also contends that Nurse McDonald violated the Eighth Amendment when she refused to check on him at Officer Middlebrooks's request, he still does not state a claim for relief. No facts support the conclusion that Nurse McDonald's refusal caused a delay in treatment that led to or exacerbated his injuries. In the Complaint, Scott alleges that after Nurse McDonald refused to check on Scott, Officer Middlebrooks contacted the urgent care office and he "was immediately placed in a wheelchair and taken to the urgent care building." Complaint at 4 (emphasis added). At urgent care, Scott received food and a tube of glucose and medical checked his blood pressure and blood sugar. Id. at 4-5. According to the exhibits attached to the Complaint, an EKG was administered to Scott that produced abnormal results, at which time medical transferred him to Shands. Doc. 1-7 at 13. Scott does not allege any causal connection between Nurse McDonald's refusal to see him and his injuries, and as such, he has failed to

plead facts sufficient to nudge his claim of deliberate indifference "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Therefore, the Nurse Defendants' Motion is due to be granted.[11]

### C. Scott's Request in his Response

In response to Centurion's Motion, Scott "requests a lawyer to amend [the Complaint]." Centurion Response at 8 (emphasis omitted). He asserts that on July 15, 2022, doctors at Shands discovered that Scott had kidney damage. <u>Id.</u> According to Scott, during his hospitalization in 2020, doctors had recommended that Scott should stop taking two diabetes medications because they could result in kidney damage; however, UCI medical staff ignored the recommendation. <u>Id.</u>; FDOC/Nurses Response at 5-6.

Initially, the Court notes that Scott asks to amend the Complaint to raise claims properly brought in a separate action. <u>See</u> Centurion Response at 8; Fed. R. Civ. P. 20(a)(2) (providing that a plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action"). Nevertheless, to the

---

[11] For these same reasons, because Scott's allegations fail to state a claim for a constitutional violation, the Nurse Defendants' assertion of their right to qualified immunity would provide an alternative basis for dismissal.

extent Scott seeks leave to amend the Complaint, his request is not properly before the Court. A request for affirmative relief is not properly made when simply included in a response to a motion. <u>See</u> Fed. R. Civ. P. 7(b); <u>see also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quoting <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1222 (11th Cir. 1999))). Thus, the Court will not entertain Scott's request for relief included in the Response.

Accordingly, it is now

**ORDERED:**

1.      Defendant Centurion of Florida, LLC's Motion to Dismiss (Doc. 17); Defendants Ricky Dixon and Travis Lamb's Motion to Dismiss (Doc. 24); and Defendants Patricia McDonald and Wendy Hall's Motion to Dismiss (Doc. 25) are **GRANTED** to the extent provided in the Order.

2.      Plaintiff Paul W. Scott's Complaint (Doc. 1) is **DISMISSED without prejudice**.[12]

---

[12] Although Defendants request dismissal with prejudice, the Court dismisses the case without prejudice to Scott filing a complaint in a new action that cures the deficiencies identified in this Order.

3.     The **Clerk** shall enter judgment dismissing the case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of July, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 7/6
c:     Paul W. Scott, #071615
        Counsel of record